UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

The United States of America, ex. rel.,
John Doyle and Angela Lamp,

    Plaintiffs,

v.

Diversified Collection Services, Inc.,

    Defendant.

Case No. 2:04-cv-053

Judge Michael H. Watson

## OPINION AND ORDER

Plaintiffs assert claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, the Ohio Consumer Sales Practices Act, and the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733. Plaintiffs maintain defendant violated subsections (b), (e), and (f) of the FDCPA by making false or misleading representations in any communications to collect a debt, by using unfair or unconscionable practices in the collection of a debt, and contacting third parties for purposes other than acquiring location information. Plaintiffs also argue defendant violated the FCA by making false certifications knowingly.[1]

This matter is before the Court on defendant's motion for partial judgment on the pleadings (Doc. 35) on the grounds that plaintiffs' FCA claims should be dismissed for

---

[1] Pursuant to 31 U.S.C. § 3729 and § 3730(b), plaintiffs may bring a qui tam action on behalf of themselves and the United States of America against defendants for all relief or recovery that the Government or plaintiffs may claim as a matter of law or equity.

lack of subject matter jurisdiction, failure to state a claim under the FCA, and failure to plead the circumstances of fraud with particularity. For the reasons that follow, the Court grants defendant's partial motion for judgment on the pleadings.

## I. Facts

For purposes of ruling on defendant's motion, the Court accepts as true the well-pleaded facts set forth in the complaint. Plaintiffs are individual citizens of the State of Ohio. (Amend. Compl. ¶ 14, 48.) Defendant is a California for-profit corporation, now majority owned and operated by Parthenon Capital, LLC, and affiliated entities. (Id. at ¶ 4.) Defendant provides debt collection services to federal government agencies under various contracts with the United States Department of Education and other federal agencies, including collecting unpaid student loan debts owed by current or former post-secondary students. (Id. at ¶ 5-6.)

On January 23, 2003, Ruth Larson, an employee of Diversified Collection Services, called Bonnie Monlux, a neighbor of plaintiff John Doyle, as part of defendant's student loan collection activities. (Id. at ¶ 31.) Ms. Larson told Ms. Monlux that she was trying to contact Mr. Doyle, and explained that she had obtained Ms. Monlux's unlisted phone number because there was an emergency concerning Mr. Doyle. (Id. at ¶ 36-37.) Ms. Monlux walked one-half mile to Mr. Doyle's house to inform him to call Ms. Larson immediately. (Id. at ¶ 40.) Because Mr. Doyle has children living in the western part of the United States, and Ms. Larson's phone number had an out-of-state area code, he concluded that something had happened to one of them. (Id. at ¶ 42.) When Mr. Doyle called Ms. Larson, she informed him that her purpose in calling was to arrange for the immediate payment of his student loan debt,

which she stated was more than $26,000.00, not the $11,728.00 that the local technical school had arranged for him. (Id. at ¶ 18, 44.) Mr. Doyle received an initial written communication from defendant dated January 23, 2003, but it was mailed to him on January 25, 2003. (Id. at ¶ 47.)

In late January 2003, an unknown employee of defendant called plaintiff Angela Lamp's father, Clarence, at the address Ms. Lamp provided when her student loans were incurred. (Id. at ¶ 56.) The unknown employee of defendant then asked to speak with Ms. Lamp, but Mr. Lamp explained that his daughter had not lived at that address for several years. (Id. at ¶ 60.) The unknown employee then said that since his daughter had been living with him when the loan was made, he would be liable to pay the debt if his daughter did not, and if neither paid the debt in full immediately, both he and his daughter would be sued. (Id. at ¶ 65-66.) Although Mr. Lamp told the unknown employee not to call his home again, another one of the defendant's employees called his home a few days later to inquire about his daughter's debt. (Id. at ¶ 67-68.)

Plaintiffs filed their original complaint on January 23, 2004 (Doc. 1), then filed their amended complaint on March 22, 2004 (Doc. 4). Plaintiffs' amended complaint included their claim for relief under the FCA, which is the subject of the defendant's motion for partial judgment on the pleadings and this opinion.

## II. Standard of Review

A motion to dismiss is properly granted only if it appears that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v.*

*Gibson*, 355 U.S. 41, 45-46 (1957). All factual allegations in the complaint are accepted as true and construed in the light most favorable to the plaintiff. *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 544 (6th Cir. 1991). Federal courts are courts of limited jurisdiction. *Aldinger v. Howard*, 427 U.S. 1, 15 (1996). Therefore, the plaintiff bears the burden of establishing jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).

### III. Discussion

Defendant asserts plaintiffs' FCA claim should be dismissed for lack of subject matter jurisdiction, failure to state a claim under the FCA, and failure to plead the circumstances of fraud with particularity. Because the Court finds that plaintiffs' claim under the FCA should be dismissed for lack of subject matter jurisdiction, it need not decide whether plaintiffs pleaded the allegations of fraud with sufficient particularity.

### A. Introduction

Plaintiffs' amended complaint asserts that defendant knowingly presented a false claim for payment to the United States government, a violation of both 31 U.S.C. § 3729(a)(1) and (b). The qui tam provision of the FCA allows private citizens, acting on behalf of the government, to recover up to thirty percent of the proceeds from the action or settlement from anyone who has committed a fraud upon the government. 31 U.S.C. § 3730(d)(2).

The original version of the FCA was enacted in 1863, and allowed anyone to bring a qui tam action and receive fifty percent of the amount recovered. S. REP. NO. 345, 99th Cong. 2d Sess. 8-10 (1986) *reprinted in* 1986 U.S.C.C.A.N. 5266, 5273.

Congress passed the FCA in response to widespread fraud by contractors against the government during the Civil War. *United States v. Rainwater*, 356 U.S. 590, 592 (1958). "Testimony before Congress painted a sordid picture of how the United States had been billed for nonexistent or worthless goods, charged exorbitant prices for goods delivered, and generally robbed in purchasing the necessities of war." *United States v. McNinch*, 356 U.S. 595, 599 (1958). The FCA is "intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." *United States v. Neifert-White Co.*, 390 U.S. 228, 232 (1968). The maxim "[m]en must turn square corners when they deal with the Government" applies fully in the FCA context. *United States v. Midwest Specialties, Inc.*, 142 F.3d 296, 302 & n. 4 (6th Cir. 1998).

Congress amended the FCA once in 1943, and then again in 1986, "to encourage any individual knowing of Government fraud to bring that information forward." S. REP. NO. 345, 99th Cong. 2d Sess. 8-10 (1986) *reprinted in* 1986 U.S.C.C.A.N. 5266, 5273. Congress has placed some jurisdictional limits on qui tam actions, however, in the interest of avoiding parasitic suits. *See United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1347 (4th Cir. 1994), *cert. denied*, 513 U.S. 928 (1994). The FCA provides, in pertinent part:

> "No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing,...or from the news media, unless the action is brought by the Attorney General or the person bringing the action is the original source of the information."

31 U.S.C. § 3730(e)(4)(A). The two issues before the Court are whether the plaintiffs' claims are based upon a public disclosure, and if they were, then whether the plaintiffs were the original source of the information.

### B. "Based Upon" a Public Disclosure

The first issue is whether the plaintiffs' claims are based upon a public disclosure. If they are not, there is no jurisdictional bar. *United States ex rel. Fine v. Advanced Sciences, Inc.*, 99 F.3d 1000, 1004 (10th Cir. 1996.) Two Sixth Circuit decisions guide the Court's analysis for both issues pertaining to the FCA: *United States ex rel. Jones v. Horizon Healthcare Corp.*, 160 F.3d 326 (6th Cir. 1998), and *United States ex rel. McKenzie v. BellSouth Telecommunications, Inc.*, 123 F.3d 935 (6th Cir. 1997),. In *Jones*, the Sixth Circuit analyzed the public disclosure inquiry by examining the following elements: (1) whether there has been a public disclosure in a criminal, civil, or administrative hearing; or congressional, administrative, or government report, hearing, audit, or investigation; or from the news media; (2) of the allegations or transactions that form the basis of the relator's complaint; and (3) whether the relator's action is "based upon" the publicly disclosed allegations or transactions. *Jones*, 160 F.3d at 330. The Court in *Jones* instructed, "[i]f the answer is 'no' to any of these questions, the inquiry ends and the qui tam action may proceed." *Id*.

### 1. Whether There Has Been a "Public Disclosure"

In both *Jones* and *McKenzie*, the Sixth Curcuit stated public disclosure includes documents that have been filed with a court, such as discovery documents and a plaintiff's complaint. *Jones*, 160 F.3d at 330; *McKenzie*, 123 F.3d at 939. Here,

plaintiffs' amended complaint includes, as Exhibit 6, two previously filed lawsuits against defendant, as well as an Internet web page and a Pittsburgh Post-Gazette article, all dealing with defendant's violations of the FDCPA, as well as misrepresentations and harassment by defendant. The Court concludes these constitute public disclosures. The first element of the jurisdictional bar has therefore been met.

### 2. Whether the Public Disclosure was of the Allegations or Transactions that Form the Basis of Plaintiffs' Complaint

Plaintiffs argue the allegations and transactions forming the basis of their FCA action are based on the direct knowledge of their personal dealings with defendant, therefore, the "public disclosure" above did not form the basis of their FCA action. Pls.' Mot. at 13. The Sixth Circuit encountered the same arguments by both *McKenzie* and *Jones* in their respective FCA claims. McKenzie was a dispatcher for South Central Bell's maintenance technicians. *McKenzie*, 123 F.3d at 937. She would often receive complaints about telephone lines being out of service, and if they were out of service for more than 24 hours, South Central Bell would refund the cost of that day's service for those customers who requested a refund. *Id.* McKenzie stated that she and other dispatchers would often misclassify telephone lines as either in service or having diminished service when the lines were in fact out of service, to avoid the company's obligation to refund money to their customers. *Id.* at 938. This, according to McKenzie, formed the basis of her independent knowledge. *Id.*

Jones, like McKenzie, was also an employee of the company she attempted to sue under the FCA. *Jones*, 160 F.3d at 328. Jones argued that while conducting a

claims review, she independently learned that Horizon Healthcare's forms were incorrect because the services allegedly performed did not correspond with the patients' files and the instructions of the medical staff. *Id*. Jones originally sued her employer under the Michigan Whistleblower's Protection Act ("WPA") for wrongful termination in September 1993, then later filed her complaint alleging violations of the FCA in the district court in April 1994. In her FCA complaint, Jones argued that it was from her claims reviews that she learned her employer submitted false Medicare forms to the government, and therefore formed the basis of her FCA complaint. *Id*. at 333.

In *Jones*, the issue was whether her complaint under the WPA constituted a public disclosure that formed the basis of the claims raised in her FCA complaint. *Id*. at 331. Jones's WPA complaint was filed first, making it a public disclosure, and her FCA complaint, filed later, contained similar allegations. *Id*. The Sixth Circuit affirmed the district court's conclusion her WPA complaint was the basis of the allegations that formed her FCA complaint because each contained the same fraudulent allegation; Horizon Healthcare was submitting false Medicare forms to the government. *Id*. at 332.

Similarly, in *McKenzie*, the district court dismissed the FCA complaint because it was held to be based upon a lawsuit previously filed against BellSouth, McKenzie's employer, by Ronald Dorris. *McKenzie*, 123 F.3d at 939. In the previous suit, one of Ronald Dorris's allegations was that South Central Bell employees were incorrectly reporting the time at which a repair was made if the repair was not made within the time promised. *Id*. The *McKenzie* court affirmed the district court's dismissal, holding,

"[a]lthough not directly addressing fraud against federal facilities, Dorris's allegations are nearly identical to some of McKenzie's claims."

The facts of the instant case, when accepted by the Court as true, essentially mirror *McKenzie*. Here, defendant, through its debt collection services, contacted people other than the plaintiffs. (Am. Compl. ¶ 31, 56.) Defendant's employees misstated information to Ms. Monlux, in order to have Mr. Doyle contact them (Id. at ¶ 36-37), and to Ms. Lamp's father as well. (Id. at ¶ 65-66.) As in *McKenzie*, each plaintiff here argues they learned about the fraudulent conduct through their own independent dealings with the defendant, and this forms the basis of their FCA complaint.

Plaintiffs, like McKenzie, also cite previously filed lawsuits against the alleged wrongdoer in their amended complaint containing their FCA claims by including both *Kort v. Diversified Collection Services, Inc.*, 270 F.Supp.2d 1017 (N.D. Illinois 2003), and *Farley v. Diversified Collection Services, Inc.*, 1999 U.S. Dist. LEXIS 16174 (N.D. Illinois 1999) in Exhibit 6. In *Kort*, the plaintiff brought a class action against Diversified, the defendant here, alleging a violation of the FDCPA. *Id*. Kort received a letter from Diversified which, she argued, threatened to garnish her wages sooner than Diversified was legally entitled to do so, and misrepresented the date by which she must act to avoid wage garnishment. *Id*. at 1022. In *Farley*, the plaintiffs brought a class action against Diversified for violating the FDCPA by sending them a letter stating that they had received a formal notice that Diversified's office required immediate collection of their unpaid debt. *Id*. at *3. The letter also stated, "unless you notify Diversified

Collection Services, Inc. within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid." *Id*. Plaintiffs included, as Exhibit 5 of their amended complaint under the FCA, a letter addressed to Mr. Doyle, that contained this language as well. Finally, Exhibit 5, as stated previously, also included an Internet web page and a Pittsburgh Post-Gazette article dealing with the defendant's violations of the FDCPA.

Although plaintiffs were personally subjected to illegal and abusive debt collection practices by defendant, the prior suits cited by plaintiffs in Exhibit 6 of their amended complaint indicate there was a prior public disclosure of the allegations that form the basis of plaintiffs' complaint. While plaintiffs argue that there was no public disclosure of the direct dealings between them and defendant, the several prior public disclosures are nearly identical to most of plaintiffs' FCA claims, as evidenced by Exhibit 6. Under the Sixth Circuit's rationale in *McKenzie*, these public disclosures have exposed defendant's practices. The Court therefore concludes that the second jurisdictional bar has been met.

### 3. Whether Plaintiffs' Complaint is "Based Upon" the Public Disclosure

Plaintiffs next argue their amended complaint is not based upon the public disclosure, but their own direct, personal involvement with defendant. Plaintiffs assert this is completely independent of any public disclosures. Pls.' Mot. at 13. In *Jones*, the Sixth Circuit held that "based upon" means "supported by" and includes any action based even partly upon public disclosures. *Jones*, 160 F.3d at 332 (quoting *McKenzie*, 123 F.3d at 940). The *Jones* court also cited *McKenzie* for the proposition "individuals

who base any part of their allegations on publicly disclosed information are barred from bringing a qui tam action." *Id.* (quoting *McKenzie*, 123 F.3d at 940). The *Jones* court went on to state, "[i]n making this determination of whether an action is 'based upon' a public disclosure, a court should look to whether substantial identity exists between the publicly disclosed allegations or transactions and the qui tam complaint." *Id.* (quoting *McKenzie*, 123 F.3d at 940). Therefore, under this third element of the test, if there is substantial identity between the publicly disclosed allegations and the qui tam complaint, plaintiffs' FCA claims are jurisdictionally barred.

Plaintiffs have not alleged any facts to show there is not a substantial identity between the publicly disclosed allegations and their qui tam complaint. Indeed, plaintiffs allege in their amended complaint that their claims arise from the "practices and activities included in the collection activities and practices utilized by defendant in its dealings as to [plaintiffs], those individuals described in Exhibit 6, and those who were parties to the FDCPA litigation against defendant cited above." (Amend. Compl. ¶ 88.) Not only is there a substantial identity between the plaintiffs' claims and those in *Kort* and *Farley*, but plaintiffs here have expressly stated that their FCA claim is based upon previous public disclosures, which illustrate the practices of defendant.

Under each element of the public disclosure inquiry set forth by the Sixth Circuit in *Jones* and *McKenzie*, plaintiffs' FCA claim is jurisdictionally barred. Exhibit 6 of plaintiffs' amended complaint contains several previous public disclosures. These previous public disclosures form the basis of the allegations of plaintiffs' FCA complaint. Finally, plaintiffs' FCA complaint is "based upon" these public disclosures because they

support plaintiffs' allegations of purported fraud by defendant. For these reasons, the Court concludes that plaintiffs have failed to meet their burden with respect to public disclosures, and therefore, the third jurisdictional element bars plaintiffs' FCA claims.

## C. Original Source

Despite the Court's conclusion that plaintiffs' FCA claims are based upon a public disclosure, plaintiffs may still bring a qui tam action if they were the "original source" of the public disclosure. Under the FCA, an "original source" is "an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information." 31 U.S.C. § 3730(e)(4)(B). The Sixth Circuit has held that a relator must also provide the government with the information upon which the allegations are based prior to any public disclosure. *Jones*, 160 F.3d at 333-334 (quoting *McKenzie*, 123 F.3d at 942). The *Jones* court went on to note, "[t]he court reasoned that this rule is necessary because one is not a true whistleblower unless she is responsible for alerting the government to the alleged fraud before such information is in the public domain." *Id*. Footnote five of the majority opinion is particularly instructive:

> "[T]he *McKenzie* interpretation merely ensures that an "original source" be original. This requirement encourages individuals to report fraud to the government expeditiously and works to preclude parasitic actions. The *McKenzie* court recognized that the other circuits that had considered this interpretive question were split, and this court decided that an interpretation of these section that requires a relator to disclose the relevant information to the government prior to any public disclosure was most in keeping with the language and intent of

>  the statute. We believe that this decision was correct, and it is certainly the law of the Circuit."

*Id.* at 334.

Under this principle, the plaintiffs cannot be an "original source" of the public disclosure. Plaintiffs' argument that they are the original source of the government's knowledge or of the public disclosures is without merit. As the *Jones* court stated, "[a]lthough [plaintiffs'] lawsuit in this case [is] neither parasitic nor opportunistic, the qui tam provisions were intended not only to block freeloading relators, but also to inspire whistleblowers to come forward as soon as possible." *Id.* at 335.

Here, the plaintiffs were not the first ones to sue the defendant for violating the FDCPA, nor were they the first ones to report the information to the government. As the Sixth Circuit has stated, "[w]here information has been publicly disclosed, the government has access to enough information to bring a civil action and the citizen-suit becomes unnecessary." *United States ex. rel Gilligan v. Medtronic, Inc.*, 403 F.3d 386, 389 (6th Cir. 2005). The several previous public disclosures that put the government on notice of any fraudulent conduct by the defendant. These were disseminated to the public through other lawsuits and individuals in the news media and Internet, not the plaintiffs, as evidenced by Exhibit 6. Therefore, the Court concludes that plaintiffs were not the "original source" of the public disclosures.

### IV. Disposition

Plaintiffs' FCA action is based upon the prior public disclosure of the violations of the FDCPA. Moreover, plaintiffs did not qualify as an original source due to their failure to bring the information to the federal government prior to the public disclosure. The

Court therefore concludes that it lacks subject matter jurisdiction over plaintiffs' purported FCA claims. Accordingly, the Court **GRANTS** defendant's motion for partial judgment on the pleadings (Doc. 35), and dismisses plaintiffs' FCA claims for lack of jurisdiction.

The Clerk shall remove Doc. 35 from the Court's pending motions list.

**IT IS SO ORDERED**.

*/s/ Michael H. Watson*
**Michael H. Watson, Judge**
**United States District Court**